ends of the staves, as the portion of the tub which can best resist it, was a very decided improvement."

While, undoubtedly, the complainant effected a better organization of the distilling tub, mechanically, than was found in those theretofore used, it is somewhat difficult to discover what there was of invention or patentable novelty in what he did. There was nothing new in employing a cover which constituted the entire head of the tub; nor was there in employing rubber packing to make a joint steam tight, because that was a well-known expedient. There was nothing involving invention in the means employed to fasten down the cover during distillation, and this is not even contended for in this case. The patentee employed rubber packing in a seam between the ends of the staves and a cover extending over the entire tub, when others had employed paste or canvas. Upon the authority of the former case, this is to be considered as invention, but it is invention which resides within very narrow boundaries.

Turning to the language of the description in the patent, the location of the rubber ring between the cover and the ends of the staves is treated as of controlling importance, and is uniformly referred to as between the cover and the ends of the staves. However the mechanical fact be, it seems clear, that the patentee regarded it as indispensable to the efficiency of his device, that the rubber ring should be located between the cover and the ends of the staves constituting the sides of the tub. His experts concur in this opinion, and the opinion of Judge Hall in the former case brought upon the patent, assumes that this location is of primary importance, as enabling the pressure required upon the cover to make it steam tight, to act upon the ends of the staves, as the strongest resisting point. In that case, the infringing device substantially appropriated this location of the rubber ring. The testimony of the complainant himself, given upon that trial, concedes that the rubber ring must rest, to some extent, upon the ends of the staves, to constitute an infringement.

The defendants here have inserted a rim within the tub, a short distance below the top of the staves, fastened to the inner sides of the staves, and upon this have placed the rubber packing. There is no difference in principle, whether the rim is fastened into the staves by mortising, or by nails, or is supported by brackets. By this arrangement the cover of the tub, when closed, is not supported by the ends of the staves, nor is the pressure required to hold down the cover resisted by the ends of the staves. Evidently, it requires no invention to substitute the defendants' construction for that of the complainant's, and the defendants have probably appropriated all the practical advantages of the complainant's device. This, however, does not suffice to make them infringers.

They escape because the complainant's improvement resides rather in the excellence of his mechanical construction than in the invention as conceived by him and as secured to him by his patent; and, while the defendants are not permitted to appropriate the invention, they are at liberty to avail themselves of anything else found in the complainant's device.

If the complainant had been the first to discover the utility of rubber as a steam packing, or the first to utilize the entire head of the tub as a cover, in distilling tubs, or even the first to apply rubber as a steam packing in a distilling tub, so that the entire head of the tub could be used as a cover, he would be entitled to a more liberal construction of his patent than is now accorded; but, even then, it would be difficult to construe the language of the specification so as to secure to him such an invention. As it is, the only claim which can be sustained is the one for "the cover when provided with the rubber ring, substantially as described," that is, when located between the cover and the ends of the staves.

The bill must be dismissed.

---

VAN METER v. MITCHEL. See Cases Nos. 16,865 and 16,865a.

VAN METER (RICHARD v.). See Case No. 11,763.

---

## Case No. 16,864.

### VAN METRE v. MITCHELL.

[See Case No. 16,865.]

---

## Case No. 16,865.

### VAN METRE v. MITCHELL.

[2 Wall. Jr., 311;[1] 7 Pa. Law J. 115; 4 Pa. Law J. 111.]

Circuit Court, W. D. Pennsylvania. Oct., 1853.

FUGITIVE SLAVES—"HARBOURING" AND "CONCEALING"—ACTION OF DEBT FOR PENALTY.

1. A law of congress enacts, that if any person shall harbour or conceal a fugitive from labour after notice that he or she is so, such person shall forfeit and pay $500 to be recovered by action of debt; saving moreover to the owner of such fugitive a right of action on account of the injuries, &c.

2. "Notice" here means knowledge, and "harbouring" means entertaining or sheltering a fugitive with the purpose of encouraging him in his desertion of his master; with the purpose to further his escape, and to impede and frustrate the master's reclamation of him. "Harbouring" is not here synonymous with "concealing" used in the same phrase with it, and there may be harbouring without any concealment.

3. Under this act, if the plaintiff sues in debt for the penalty of $500, which it gives for illegally harbouring and concealing, he may recover it upon proof of such harbouring or conceal-

[1] [Reported by John William Wallace, Jr., Esq.]